T.C. Memo. 2015-162

UNITED STATES TAX COURT

CHARLES DERECK ADAMS AND MELINDA ELIZABETH ADAMS,
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15556-13.                    Filed August 17, 2015.

Charles Dereck Adams and Melinda Elizabeth Adams, pro sese.

<u>Christopher R. Moran</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent) deter-

mined a deficiency in petitioners' 2010 Federal income tax of $34,726[1] and an

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect
for the year in issue, and all Rule references are to the Tax Court Rules of Practice
and Procedure.  All dollar amounts are rounded to the nearest dollar.

[*2] accuracy-related penalty of $6,940 pursuant to section 6662(a).  After conces-

sions,[2] the issues for decision are:  (1) whether petitioners are taxable on unre-

ported distributions from retirement plans; (2) whether petitioners are liable for the

10% additional tax on early distributions from those plans; and (3) whether peti-

tioners are liable for the accuracy-related penalty.  We resolve all three issues in

respondent's favor.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated by this reference.  Petitioners

resided in Virginia when they filed their petition.

Charles Adams (petitioner) was previously employed by the Department of

Defense.  His employment was terminated, allegedly for discriminatory reasons.

He commenced litigation challenging that discharge.

After termination of his employment, petitioner was unable to secure a job

with comparable pay.  To provide for his family's living expenses, he made sub-

stantial withdrawals during 2010 from his retirement accounts.  He was not aged

---

[2]Respondent determined that petitioners' return omitted $91 of interest in-come for 2010; petitioners did not assign error in their petition or supply argument or other evidence concerning it at trial.  We deem this point conceded.  See Rule 34(b)(4) (concession by failing to assign error); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986) (concession by failing to argue).

[*3] 59-1/2 or older when he made these withdrawals.  The withdrawals totaled $224,691, as follows:

| Source | Amount |
| --- | --- |
| Thrift Savings Plan | $150,000 |
| Thrift Savings Plan | 22,720 |
| Charles Schwab IRA | 51,971 |
| Total retirement income | 224,691 |

Petitioners received an extension of time to file their 2010 Federal income tax return.  They timely filed that return on October 12, 2011, reporting retirement income of $152,997.  They thus failed to report $71,694 of retirement plan distributions.  Petitioners claimed various itemized deductions on their return, including medical expenses of $78,955 and "miscellaneous deductions" of $18,779.

Respondent's "automated underreporter unit" flagged petitioners' return because of a mismatch between their reported retirement income and the amounts shown on the Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that the payors supplied. The IRS accordingly increased petitioners' taxable retirement income by $71,694. The IRS did not examine petitioners' claimed deductions for medical or

[*4] miscellaneous expenses; however, the increase to their adjusted gross income resulted in computational adjustments to both deductions, reducing the allowed medical expense deduction to $73,571. The IRS also imposed, under section 72(t), a 10% additional tax on the early distributions from petitioner's qualified retirement plans.[3]

On September 17, 2012, the Philadelphia Service Center mailed petitioners a notice setting forth these adjustments. The notice explained that retirement distributions are subject to a 10% additional tax if "paid before you reached age 59-1/2," but that "exceptions may apply as indicated in Publication 17, Your Federal Income Tax * * * or Publication 590, Individual Retirement Arrangements." It then advised petitioners: "If the distributions shown on this notice are exempt from the additional tax, please send us a signed explanation." Petitioners did not respond to this invitation.

On April 8, 2013, the IRS mailed petitioners a timely notice of deficiency determining their 2010 tax liability as set forth above. Petitioners timely petitioned this Court for redetermination. Their petition alleges that the withdrawals

---

[3]The Form 1099-R reporting the $22,720 distribution described it (erroneously it seems) as an "early distribution, exception applies." The IRS did not question this reporting and accordingly computed the additional tax as 10% of the $201,971 balance of the distributions, or $20,197. Respondent has not sought to amend his answer to assert a larger additional tax.

**[\*5]** from petitioner's retirement plans should be exempt from tax because they resulted "from discrimination at work and [were] needed for medical care (and to fight for justice)."

In preparing for trial respondent's counsel noticed that petitioners might qualify for a reduction of the additional tax by virtue of section 72(t)(2)(B).  On July 1, 2014, he wrote a letter to petitioners bringing this issue to their attention:

> The 10% tax may not apply in certain situations including when the distributions are made to pay medical expenses.  I.R.C. § 72(t)(2)(B).  In your petition you allege that some of the distributions were used to pay medical expenses.  If you can provide proof that the retirement account distributions were used to pay your or your family member's medical expenses, we may be able to offer a partial concession on this issue.  To consider a partial settlement * * * we will need to see invoices, receipts, cancelled checks or other proof of payment.

Petitioners acknowledged receipt of this letter, but they provided respondent's counsel with no substantiation of any medical expenses.  Respondent's pretrial memorandum represented that, despite his requests, petitioners had declined to meet to "prepare for trial and produce records."  During a pretrial conference call with the parties, the Court noted the potential relevance of petitioners' claimed deduction for medical expenses.  Petitioners nevertheless persisted in declining to provide any substantiation of those expenses to respondent's counsel.

**[\*6]** At trial petitioners argued that it would be inequitable to tax them on retirement plan withdrawals that were necessitated by petitioner's (allegedly discriminatory) job termination. To document the difficulties this had caused them, petitioners attempted to introduce into evidence a narrative that petitioner had prepared which recounted (among other things) the family's medical problems. Respondent's counsel objected to the admission of this document:

> I've sent him letters in the past, and I believe we've discussed it on our conference call, that potentially medical expenses could be relevant to the early withdrawal penalty. I've been asking Mr. Adams for months to provide whatever proof he has of that; he hasn't produced anything other than this, which is really just argument.

The Court examined this document and determined that it was devoid of any substantiation of actual medical expenses but consisted solely of argument. The Court accordingly sustained respondent's objection to its admissibility. The only explanation petitioners have offered for their refusal to supply substantiation of the medical expenses underlying their claimed deduction is that the receipts are allegedly voluminous and would be tedious and expensive to copy.[4]

---

[4]Respondent has not sought to amend his answer to deny any portion of the $73,571 medical expense deduction that was allowed in the notice of deficiency.

**[\*7]**                                        OPINION

A.     Burden of Proof

When contesting the determinations set forth in a notice of deficiency, the taxpayer generally bears the burden of proof.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.[5]

B.     Taxability of Retirement Account Distributions

Section 61(a) provides that "gross income means all income from whatever source derived."  Section 408(d)(1) provides that, "[e]xcept as otherwise provided in this subsection, any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee."  Section 408(d) provides several exceptions to this rule--e.g., for rollover contributions, transfers incident to divorce, and distributions for charitable purposes.  See sec.

---

[5]Section 6201(d) provides that the IRS in certain circumstances cannot rely solely on information returns to establish unreported income but "shall have the burden of producing reasonable and probative information" in addition thereto. This provision applies only where the taxpayer "asserts a reasonable dispute with respect to any item of income reported on an information return" and only if "the taxpayer has fully cooperated with the Secretary."  Petitioner has not asserted a reasonable dispute with respect to any item of income reported by the payors on the Forms 1099-R.

**[*8]** 408(d)(3), (6), (8). There is no exception for distributions used to defray ordinary living expenses following the loss of a job or other misfortune.

The Thrift Savings Plan in which petitioner participated while he was an employee of the Department of Defense is treated as a qualified trust described in section 401(a) that is exempt from taxation under section 501(a). See sec. 7701(j)(1)(A). Any distribution from the Thrift Savings Plan is treated in the same manner as a distribution from a qualified trust. Sec. 7701(j)(1)(B). Under section 72, any amount actually distributed from a qualified trust is taxable to the distributee in the year distributed. See sec. 402(a). Section 72 has no exception that would prevent the distributions from petitioner's Thrift Savings Plan account from being includible in his gross income.

Petitioner contends that it would be inequitable to tax him on these distributions because he would not have made these withdrawals but for his allegedly discriminatory discharge. Although petitioner acted honorably in providing for the welfare of his family following this hardship, his conduct has no bearing on whether the retirement account distributions were includible in his gross income under the Code. They are so includible.

[*9] C.        Section 72(t) Additional Tax

Where, as here, a taxpayer receives a distribution from a qualified retirement plan, section 72(t)(1) generally provides that his tax shall be increased "by an amount equal to 10 percent of the portion of such amount which is includible in gross income."  Section 72(t)(2)(A) provides several exceptions to this rule, e.g., where the taxpayer receiving the distribution has attained the age of 59-1/2 or is disabled.  See sec. 72(t)(2)(A)(i), (iii).  A further exception appears in section 72(t)(2)(B), captioned "[m]edical expenses."  It provides, with exceptions not relevant here, that an early distribution from a qualified retirement plan is not subject to the 10% additional tax to the extent it does not exceed "the amount allowable as a deduction under section 213 * * * for amounts paid during the taxable year for medical care."  As in effect for 2010, section 213(a) allowed as a deduction "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income."

Petitioner had not attained the age of 59-1/2 when he received the distributions at issue.  Petitioners are thus liable for the 10% additional tax unless another exception in section 72(t) applies.  The only exception they have alleged, by way of partial offset to the additional tax, is the exception for "medical expenses."

[*10] Petitioners have the burden of proving that this exception applies. See El v. Commissioner, 144 T.C. __, __ (slip op. at 11-15) (March 12, 2015). Although the IRS allowed a $73,571 deduction for medical expenses in the notice of deficiency, this followed a document-matching audit. The IRS did not examine the medical expenses underlying that deduction or make any judgment as to their legitimacy. To be entitled to the offset provided in section 72(t)(2)(B), petitioners must demonstrate the "amount allowable as a deduction" under section 213. The fact that the IRS did not disallow a deduction does not mean that the amount petitioners claimed for medical expenses was "allowable as a deduction." In order to show that their claimed deduction was "allowable," petitioners must establish that they are actually entitled to this deduction.

Petitioners have made no effort to discharge this burden of proof. They were repeatedly informed--by the IRS Service Center, by respondent's counsel, and by the Court--that their medical expenses, if substantiated, could serve to offset the 10% additional tax. Yet they declined to provide any substantiating documentation to respondent's counsel and brought no such evidence with them to trial. Because petitioners have failed to demonstrate that the exception set forth in section 72(t)(2)(B) applies, they are liable for the $20,197 additional tax that respondent determined in the notice of deficiency.

**[*11]** D.     Accuracy-Related Penalty

The Code imposes a 20% penalty upon the portion of any underpayment of tax that is attributable (among other things) to "[a]ny substantial understatement of income tax." Sec. 6662(a), (b)(2). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Under section 7491(c), the Commissioner bears the burden of production with respect to the liability of an individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent's notice of deficiency determined an understatement of income tax in excess of $34,000, which we have sustained. This amount comfortably exceeds $5,000 and 10% of the total tax required to be shown on petitioners' 2010 return. Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax." See sec. 7491(c).

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to * * * [it]." Once the Commissioner has carried his burden of production, the taxpayer bears the burden of proving reasonable cause and good faith. Higbee, 116 T.C. at 446-447.

[*12] The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid. "Reasonable cause" may also be shown by demonstrating reliance on the advice of a competent tax professional.

Petitioners prepared their 2010 tax return. They did not testify to having received any advice that the distributions from petitioner's retirement plans were nontaxable. To the contrary, they reported $152,997 of these distributions as taxable income and offered no rationale for omitting the $71,694 balance. We therefore sustain the penalty as to the portion of the underpayment attributable to petitioners' unreported income.

We likewise sustain the penalty as to the portion of the underpayment attributable to the 10% additional tax. On their Form 1040, U.S. Individual Income Tax Return, for 2010, petitioners were required to report on line 58 "[a]dditional tax on IRAs [and] other qualified retirement plans" and were instructed to "[a]ttach Form 5329 if required." Form 5329, Additional Taxes on Qualified Plans

**[*13]** (Including IRAs) and Other Tax-Favored Accounts, instructed the taxpayer to report on line 2 "[e]arly distributions * * * that are not subject to the additional tax" and "enter the appropriate exception number from the instructions." For 2010 the instructions told taxpayers to enter exception number 5 for "[q]ualified retirement plan distributions up to (1) the amount you paid for unreimbursed medical expenses during the year minus (2) 7.5% of your adjusted gross income for the year."

Petitioners during 2010 received $201,971 of what they knew to be early distributions from petitioner's retirement plans, but they did not report any additional tax on line 58 of their return. They did not attach Form 5329 to their return to claim that these distributions were partially exempt from additional tax on account of their medical expenses. And when the possible availability of this offset was explained to them by the IRS Service Center, respondent's counsel, and the Court, petitioners declined to provide any substantiation of those expenses. We accordingly conclude that they do not qualify for the "reasonable cause" defense as to any portion of the accuracy-related penalty. To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.